Thomas F. O'Connell, WSBA 16539
Davis, Arneil Law Firm, LLP
617 Washington St
Wenatchee, WA 98801
Telephone: (509)662-3551
Fax: (509)662-9074
Email: tom@dadkp.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT YAKIMA

| | |
|---|---|
| TINFRA, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> BIT CAPITAL GROUP, LLC, a Delaware limited liability company; JIMMY ODOM, an individual; and JAMES THOMMES, an individual, <br><br> Defendants. | NO. 2;23-CV-00082 <br><br> DEFENDANTS' MOTION REQUESTING THAT NO TEMPORARY RESTRAINING ORDER BE ENTERED WITHOUT GIVING DEFENDANTS NOTICE AND AN OPPORTUNITY TO BE HEARD BE ENTERED <br><br> **[WITHOUT ORAL ARGUMENT]** |

COME NOW Defendants Bit Capital Group, LLC (BitCap), Jimmy Odom, and James Thommes, and for their Motion Requesting that No Temporary Restraining Order be Entered without Giving Defendants Notice and an Opportunity to be Heard be Entered, state:

1. Plaintiff's Complaint, filed March 24, 2023, alleges that Plaintiff advanced $1.4 million to BitCap for the purchase and upgrades of certain property located at 935 Industrial Parkway in Quincy, Washington (the "Property"), to be used for cryptocurrency mining. This is accurate.

Page 1
March 30, 2023

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

2. However, Plaintiff inaccurately alleges these funds were not used by BitCap to purchase the Property or make upgrades to it.

3. Plaintiff knew at the outset of the parties' Agreement that $1.4 million was not enough money to purchase the property and perform upgrades to enable the Property to be used for cryptocurrency mining. Without those upgrades, crypto mining would not be reasonably feasible at the Property. Thus, BitCap would have to get financing of some variety to both purchase the property and perform the necessary upgrades.

4. BitCap purchased the property through an owner financing arrangement that remains ongoing. This explains why title to the Property is not publicly recorded in BitCap's name yet. Plaintiff's cause of action is predicated on its reading of the word "purchase" to mean *only* buying the Property outright with cash. This is contrary to the plain language of the contract itself – as people can "purchase" things with financing – and the course of the parties' performance. After all, more than $1.4 million was necessary to purchase the Property and upgrade it, so it was logical and reasonably foreseeable that BitCap would get financing of some kind to make the purchase. To exhaust all $1.4 million on the Property's purchase would have thwarted the parties' intention to perform upgrades on the Property for crypto mining.

5. In December 2022, BitCap terminated the agreement after Plaintiff failed to pay invoices due and payable over a period exceeding ninety (90) days. BitCap instructed Plaintiff to make arrangements to pick up the machines hosted at BitCap's Property, but Plaintiff has failed to do so to date (incurring storage fees in the process).

6. Plaintiff has advised Defendants' counsel of Plaintiff's intention to request this Court enter a temporary restraining order without giving notice or an opportunity to be heard to Defendants unless Defendants meet certain conditions. One such condition is placing a "block" on "the $1.4 million," even though Plaintiff knows that Defendant used those funds to purchase the Property and make upgrades to it. In other words, Plaintiff is attempting to impose an impossible condition to pretextually justify seeking ex parte orders from this Court.

Page 2
March 30, 2023

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

7. It is unclear to Defendants exactly what injunctive relief Plaintiff would be seeking, as the Complaint only seeks money damages from Defendants. However, based on email communications from Plaintiff (attached hereto as Exhibit A), it appears Plaintiff would be seeking a TRO: (1) in relation to the machines being stored by BitCap that Plaintiff has failed to pick up; and (2) placing some sort of hold or freeze on Defendant's assets.

8. It would be unreasonable to proceed without giving Defendants notice or an opportunity to be heard on these issues.

9. As the emails show, Defendants are and have been offering to make arrangements with Plaintiff for the retrieval of these machines.

10. Likewise, Plaintiff admits that repayment of the Prepaid Expense Amount is not due until September 1, 2023. Plaintiff's claim for any repayment is not ripe. *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) ("[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). Moreover, Defendant disputes the existence and/or extent of any obligation to make such payments in light of Plaintiff's breaches of the contract, which led to a reduction in revenue. Had Plaintiff not breached, the greater revenue would have significantly reduced or altogether eliminated any duty to repay the Prepaid Expense Amount of $1.4 million. Further, Plaintiff's failure to pay Defendants' invoices—which precipitated termination of the agreement—would also offset any amounts Defendants would be supposedly obligated to return by September 1, 2023.

11. In short, Plaintiff has telegraphed its intention to seek ex parte orders on a claim that is not ripe, and in which there are serious good faith disputes over whether and to what extent Defendants have obligations to Plaintiff.

12. The Supreme Court has cautioned that ex parte TROs are to be used sparingly because they run counter to the ordinary rule that American courts hear both sides of a dispute before taking action:

Page 3
March 30, 2023

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

> The stringent restrictions imposed ... by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438 (1974). Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Ex parte orders where notice could have been given to the adverse party, like here, are generally only permitted where "notice to the defendant would render fruitless the further prosecution of the action. *Id.*

13. This case does not present one of the rare circumstances justifying an ex parte TRO. Plaintiff does not have a valid basis to allege that immediate and irreparable injury, loss, or damage will result to Plaintiff if Defendants are allowed to be heard in opposition. In fact, Plaintiff has undermined its position that ex parte relief without notice to Defendants is warranted considering Plaintiff has informed Defendants of its intention to seek such relief.

14. In Defendant's view, there is no good reason for the Court to enter an order to preserve some hypothetical threat to the status quo. As things stand: (1) BitCap is and has been trying to get Plaintiff to pick up its machines; and (2) payment, if any, from BitCap to Plaintiff is not due until September 1, such that any TRO concerning such funds would be the subject of a claim that is not ripe. Plaintiff will be unable to show that it is entitled to preliminary injunctive relief at all, let alone ex parte injunctive relief.

15. An ex parte TRO would be especially wrong in this case because Defendants contend that this Court lacks subject matter jurisdiction and will be filing a motion to that effect.

WHEREFORE, Defendants request this Court refrain from entering any temporary restraining order under Federal Rule of Civil Procedure 65(b)(1) should Plaintiff seek such relief as they have indicated they intend to do, and such other relief as the Court considers just.

Page 4
March 30, 2023

LAW OFFICES OF
DAVIS, ARNEIL LAW FIRM, LLP
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

Case 2:23-cv-00082-MKD    ECF No. 10    filed 03/30/23    PageID.52    Page 5 of 6

DAVIS, ARNEIL LAW FIRM, LLP

By _____
Thomas F. O'Connell, WSBA No. 16539
Attorneys for Defendant Bit Capital Group

Ben McIntosh (*pro hac vice*)
SWMW Law, LLC
ben.mcintosh@swmwlaw.com
701 Market Street, Suite 1000
St. Louis, MO 63101
(314) 480-5180
(314) 932-1566 – Facsimile

Page 5
March 30, 2023

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

## CERTIFICATE OF SERVICE

I certify that on this date, I sent for delivery a true and correct copy of the document to which is affixed by the method indicated below and addressed to the following:

| | |
|---|---|
| Brad P. Thoreson<br>Buchalter<br>1420 Fifth Ave, Ste 3100<br>Seattle, WA 98101<br>bthoreson@buchalter.com<br>*Attorney for Plaintiff* | ___ U.S. MAIL<br>___ PROCESS LEGAL SERVICE<br>X  EMAIL<br>___ HAND DELIVERY<br>___ FACSIMILE |

DATED this 30th day of March, 2023.

By: /s/ Kate Escalera

Page 6
March 30, 2023
A:\B\Bit Capital Group, LLC (BTCPA.1 (Breach of Contract) BTCP BRCH 79)\Pleadings\Bit Capital - Motion to Refrain from Entering Ex Parte TRO-688286.docx

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551